# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS INC., <br><br> Plaintiff, <br><br> v. <br><br> JAVIER MENDOZA CERVANTES, individually and doing business LA TORMENTA NIGHT CLUB, <br><br> Defendant. | Case No.: 1:16-cv-00485 - DAD - JLT <br><br> ORDER VACATING THE HEARING DATE OF AUGUST 6, 2018 <br><br> FINDINGS AND RECOMMENDATIONS GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT <br><br> (Doc. 53) |

J & J Sports Productions, Inc. seeks the entry of default judgment against Javier Mendoza Cervantes, individually and doing business as La Tormenta Night Club. (Doc. 53) Defendant has not opposed this motion. The Court finds the matter suitable for decision without an oral hearing, and the matter is taken under submission pursuant to Local Rule 230(g), and the hearing date of August 6, 2018 is **VACATED**. For the following reasons, the Court recommends that Plaintiff's motion for default judgment be **GRANTED IN PART**.

## I.     Procedural History

Plaintiff initiated this action by filing a complaint on April 6, 2016. (Doc. 1) Plaintiff asserts the company possessed the exclusive rights to the nationwide commercial distribution of "*The Fight of the Century" Floyd Mayweather, Jr. v. Manny Pacquiao Championship Fight Program*" ("the Program") televised on May 2, 2015. (Doc. 1 at 4-5, ¶ 14) However, Plaintiff contends Defendant

1

broadcast the Program at La Tormenta Night Club without paying the requisite fee. Defendant was served with the complaint, but failed to respond within the time prescribed by the Federal Rules of Civil Procedure. Upon application of Plaintiff, the Clerk of the Court entered default against Defendant on September 12, 2016. (Docs. 12, 13)

On December 27, 2016, Defendant requested that the Court set aside the entry of default. (Doc. 19) The Court determined good cause existed and granted the request to set aside the entry of default on January 12, 2017. (Doc. 21)

Defendant failed to comply with the Court's orders through the course of the litigation, including failing to lodge a settlement conference statement and failing to notify the Court whether he intended to appear at the settlement conference. (*See* Doc. 44) Therefore, the Court ordered Defendant to show cause why sanctions should not be imposed, including the striking of his answer and the entry of default. (*Id.* at 2) Defendant failed to respond to the Court's order, after which his answer was stricken and default was again entered. (*See* Doc. 51 at 2)

Plaintiff filed the motion for default judgment now pending before the Court on June 22, 2018. (Doc. 53)

## II. Legal Standards Governing Entry of Default Judgment

The Federal Rules of Civil Procedure govern the entry of default judgment. After default is entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed. R. Civ. P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Entry of default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord*

*Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit determined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As a general rule, the issuance of default judgment is disfavored. *Id.* at 1472.

### III. Plaintiff's Factual Allegations

The Court accepts Plaintiff's factual assertions as true because default has been entered against Defendant. *See Pope*, 323 U.S. at 22. Plaintiff alleges that by contract, it was granted exclusive domestic commercial distribution rights to the Program and, pursuant to that contract, "entered into subsequent sublicensing agreements with various commercial entities throughout North America" to broadcast the Program within their establishments. (Doc. 1 at 5, ¶¶ 15-16)

Plaintiff asserts Defendant was "an owner, and/or operator, and/or licensee, and/or permittee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as Ajua Cocina Mexicana." (Doc. 1 at 3, ¶ 7) Plaintiff alleges Defendant broadcast the Program at La Tormenta Night Club without purchasing a proper sublicense from Plaintiff. (*Id.* at 5, ¶ 17)

For this act, Plaintiff alleged violations of 47 U.S.C. §§ 553 and 605, conversion, and a violation of the California Business and Professions Code. (*See generally* Doc. 1 at 4-11) In the application for default judgment, Plaintiff requests damages for the violation of 47 U.S.C. § 605 and conversion. (*See* Doc. 15-1) Therefore, the Court will address only these claims.

### IV. Discussion and Analysis

Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds the factors weigh in favor of granting Plaintiff's motion for default judgment.

#### A. Prejudice to Plaintiff

The first factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and potential prejudice to the plaintiff weighs in favor of granting a default judgment. *See*

*Pepsico, Inc.*, 238 F. Supp. 2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages. *Id.*; *Moroccanoil, Inc. v. Allstate Beauty Prods.*, 847 F. Supp. 2d 1197, 1200-01 (C.D. Cal. 2012). Therefore, the Court finds Plaintiff would be prejudiced if default judgment is not granted.

### B. Merits of Plaintiff's claims and the sufficiency of the complaint

Given the kinship of these factors, the Court considers the merits of Plaintiff's substantive claims and the sufficiency of the complaint together. *See Premier Pool Mgmt. Corp. v. Lusk*, 2012 WL 15932060, at *5 (E.D. Cal. May 4, 2012). The Ninth Circuit has suggested that, when combined, the factors require a plaintiff to "state a claim on which the plaintiff may recover." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175.

#### 1. Claim arising under 47 U.S.C. § 605

The Federal Communications Act of 1934 ("Communications Act") "prohibits the unauthorized receipt and use of radio communications for one's 'own benefit or for the benefit of another not entitled thereto.'" *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) (citing 47 U.S.C. § 605(a)). In pertinent part, the Communications Act provides, "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the … contents … of such intercepted communication to any person." 47 U.S.C. § 605(a). Thus, Plaintiff must establish it was the party aggrieved by Defendant's actions. 47 U.S.C. § 605(e)(3)(A). Plaintiff must also show Defendant intercepted a wire or radio program and published it without permission. 47 U.S.C. § 605(a).

##### a. Party aggrieved

Under the Communications Act, a "person aggrieved" includes a party "with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming." 47 U.S.C. § 605(d)(6). In the Complaint, Plaintiff asserted that J & J Sports Productions was granted the exclusive, nationwide commercial distribution rights to the Program. (Doc. 1 at 5) In support of this assertion, Joseph Gagliardi, President of J & J Sports Productions produced the Closed Circuit Television License Agreement between Mayweather Promotions and Plaintiff, granting Plaintiff "the exclusive license to exhibit . . . [the] live telecast" of the Program. (Doc. 53-4 at 10; *see also id.* at 10-16) Accordingly, the Court finds Plaintiff was the party aggrieved

within the meaning of Section 605.

### b. Interception and publication of the Program

Plaintiff acknowledges it cannot be certain of the method of interception used to receive the Program. (Doc. 53-1 at 9) Similarly, in *Joe Hand Prod. v. Behari*, 2013 WL 1129311 (E.D. Cal. Mar. 18, 2013), the plaintiff was unable to identify the nature of the transmission. This Court observed: "Plaintiff's inability to allege the precise nature of the intercepted transmission in this case …raises a question regarding the scope of 47 U.S.C. § 605(a) and the sufficiency of plaintiff's claim under that provision." *Id.*, 2013 WL 1129311 at *3. Nevertheless, Plaintiff provided evidence that Defendant broadcast the Program in his establishment, because an investigator witnessed the Program broadcast at La Tormenta Night Club. (Doc. 13-3)

Because Plaintiff was a party aggrieved, and Defendant intercepted the Program and published it without permission, Plaintiff has established the elements of a claim under the Communications Act.

### 2. Conversion

As recognized by the Ninth Circuit, conversion has three elements under California Law: "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Services, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992); *see also Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581 (2005) ("elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages"). Previously, this Court determined the possession of "a right to distribute programming" constitutes ownership of properly for purposes of conversion. *DIRECTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189-90 (E.D. Cal. 2005) (citing *Don King Prods./ Kingsvision v. Lovato*, 911 F.Supp. 429, 423 (N.D. Cal. 1995)). Therefore, to state a claim for conversion, Plaintiff is required to possess the exclusive ownership of, or the exclusive right to license, the broadcasting of the Program.

Given that Plaintiff established it held the distribution rights, the company held a "right to possession of property." Further, Plaintiff alleged facts sufficient to support a finding that Defendant engaged in signal piracy by broadcasting the Program without a sublicense. One investigator, Robert Sutton, estimated the capacity of La Tormenta Night Club was "approximately 49 persons." (Doc. 53-3

at 13; *see also* Doc. 15-3 at 2)  Another investigator, Shannon Tulloss, estimated the capacity was "one hundred people." (Doc. 53-3 at 4)  Notably, the rate sheet indicates a sublicense cost $3,000.00 for an establishment with the capacity of 0-100 persons.  (Doc. 15-4 at 18)  Thus, despite the significant difference in the capacity estimates, the rate would be the same.  Consequently, Plaintiff has established damages in the amount of $3,000.00, and states a claim for conversion against Defendant.

### C. Sum of money at stake

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176.  Here, Plaintiff seeks compensatory damages for Defendant's tortuous conversion of Plaintiff's property in the amount of $3,000.00. (Doc. 53-5 at 2) Plaintiff also requests statutory damages and enhanced in the amount of $28,000 for the violation of 47 U.S.C. § 605.  (*Id.*)  Thus, Plaintiff seeks a total of $31,000.00. (*Id.*)

Given the amount of money at stake, this factor could weigh against the entry of default judgment. *See, e.g., Vogel v. Rite Aid Corp.,* 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014); *Joe Hand Promotions v. Streshly*, 655 F. Supp. 2d 1136 (S.D. Cal. 2009); *see also Moore v. Cisneros*, 2012 WL 639500, at *5 (E.D. Cal. Feb. 27, 2012) ("the fact that a large sum of money is at stake is a factor disfavoring default judgment"). However, this Court also determined that where "the statutes involved contemplate such an award under certain circumstances," this factor does not weigh against default judgment. *G & G Closed Events, LLC v. Shahen*, 2012 WL 1455087, at *6 (E.D. Cal. Apr. 26, 2012); *see also United States EEOC v. Zoria Farms, Inc.,* 2016 WL 8677142 at *9 (E.D. Cal. May 13, 2016) (noting that even when there is a substantial amount of money, if the amount requested "is not greater than that provided by statute…[t]his factor does not weigh against entry of default judgment). Accordingly, the Court finds this factor does not weigh against Plaintiff's request for default judgment. Moreover, the Court declines to enter judgment in the amount requested, and the sum of the money awarded below is tailored to the misconduct of Defendant.

### D. Possibility of dispute concerning material facts

There is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in Plaintiff's Complaint as true and (2) though properly served, Defendant failed to defend in this action, and his answer was stricken. *See Pepsico, Inc.*, 238

F.Supp.2d at 1177; *see also DR JKL Ltd. v. HPC IT Educ. Ctr.,* 749 F. Supp. 2d 1038, 1051 (N.D. Cal. 2010) ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages"). Therefore, this factor does not weigh against default judgment.

### E. Whether default was due to excusable neglect

Generally, the Court will consider whether Defendant's actions, such as a failure to file an answer, is due to excusable neglect. *See Eitel*, 782 F.2d at 1472. Here, Defendant failed to defend the action and clearly abandoned the litigation through failing to respond to the Court's orders, which resulted in the answer being stricken. (Doc. 44 at 1; Doc. 51 at 2) Given these facts, it is unlikely that Defendant's actions were the result of excusable neglect. *See DR JKL Ltd.*, 749 F. Supp. 2d at 1051 (finding that where the defendants filed an answer but failed to otherwise defend in the action and default was entered, there was no evidence that the defendants' actions were "the result of excusable neglect"). Accordingly, this factor does not weigh against default judgment.

### F. Policy disfavoring default judgment

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Here, however, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against default judgment because the defendant's failure to defend in this action makes a decision on the merits impractical.

## V. Damages

Under the Communications Act, a party aggrieved may recover actual damages or statutory damages "not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). When the Court determines a violation was "committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain," a court may award enhanced damages by increasing the awarded damages up to $100,000.00 for each violation. 47 U.S.C. § 605(e)(3)(C)(ii). The Court has "wide discretion" to determine the proper amount of damages to be awarded. *DirecTV Inc. v. Le*, 267 Fed. App'x 636 (9th Cir. 2008) (citation omitted).

### A. Statutory damages

The Court may consider a number of factors in its determination of the amount of damages,

including any promotional advertising by the defendant, the capacity of the establishment, the number of patrons present at the time of the broadcast, the imposition of a cover charge, the number and size of the televisions used for the broadcast, and whether a premium was charged on food or drink. *J & J Sports Productions v. Sorondo*, 2011 U.S. Dist. LEXIS 99951, at * 10-11 (E.D. Cal. Sept. 6, 2011) (citing *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000)).

Shannon Tulloss and Robert Sutton, Plaintiff's investigators, did not indicate there were any advertisements for the Program at La Tormenta Night Club, and a cover charge was not required to enter. (*See* Doc. 53-3 at 2, 13) Mr. Sutton noted the venue had two screens, including a 19" inch television and an "80' + screen" upon which a projection was displayed. (*Id.* at 13) Mr. Tulloss, who was at the establishment between 8:16 and 10:07 p.m., indicated that he counted "29, 53, and 58" [people]" at separate times during the broadcast. (*Id.* at 2, 4) Likewise, Mr. Sutton was present from 8:55 to 9:28 p.m., and counted "48, 47, and 48 [people]" at separate times during the broadcast. (*Id.* at 13) Both investigators gave the establishment a "poor" rating in quality. (*Id.* at 4, 13) Given these factors, the Court finds an award of $8,000— which is more than two times the cost of a proper sublicense —is appropriate.[1]

### B. Enhanced Damages

Plaintiff seeks an award of $20,000 in enhanced damages, asserting the defendant acted willfully and the enhancement is appropriate under 47 U.S.C. § 605(e)(3)(C)(ii). (Doc. 53-1 at 11, 15)

Allegations regarding the amount of damages must be well-plead and supported by factual allegations. *See Pope*, 323 U.S. at 22; *Geddes*, 559 F.2d at 560. Consequently, courts have determined that an allegation that a defendant acted willfully "is insufficient to justify enhanced damages" upon the entry of default. *See Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1198 (N.D. Cal.

---

[1] Courts in this district have found that the statutory maximum is not an appropriate award for a first-time offender and in the absence of aggravating factors. *See, e.g., Joe Hand Promotions, Inc. v. Garl,* 2013 WL 3422487 (E.D. Cal. July 8, 2013) (awarding $8,000 where the program "was displayed on two televisions and two projectors," the establishment had a capacity of 200 people, 75 to 80 people were present, and no cover charge was required); *J & J Sports Prod. v. Corona*, 2013 U.S. Dist. LEXIS 96462 (E.D. Cal. July 10, 2013) (awarding $7,000 in damages where the defendant broadcast the program on two televisions, there was no premium for food or drink); *Joe Hand Promotions v. Brown,* 2010 U.S. Dist. LEXIS 119435 (E.D. Cal. Oct. 27, 2010) (awarding $4,000 in damages where the program was broadcast on six 60-inch televisions, and there was no premium for food or drink); *J & J Sports Productions, Inc. v. Morales*, 2012 U.S. Dist. LEXIS 30942 (E.D. Cal. March 8, 2012) (awarding $4,400 in statutory damages where the sublicense cost $2,200 for the broadcast that the defendants displayed on three televisions, ranging in size up to 54"); *J & J Sports Productions v. Sorondo*, 2011 U.S. Dist. LEXIS 99951 (E.D. Cal. Sept. 6, 2011) (awarding $3,600 in statutory damages, an amount two times the cost of a sublicense).

2000)); *Joe Hand Productions, Inc. v. Phillips*, 2012 WL 688799 at *2 (N.D. Cal. Mar. 2, 2012) (finding enhanced damages were not appropriate where there no facts supporting the conclusion the defendants acted willfully) *see also Kingvision Pay-Per-View v. Langthorne*, 2001 WL 1609366 (Dist. Mass. Nov. 28, 2001) (inferring willfulness from a defendant's default alone is "extremely problematic"). In addition, "[t]o establish significant commercial advantage or private financial gain, a plaintiff must allege something more than the mere airing of a program, such as engaging in promotional advertising, imposing a cover charge, or charging a premium for food or drinks." *See e.g. J & J Sports Productions, Inc. v. Garcia*, 2012 WL 4673518 at *3 (E.D. Cal. Oct. 3, 2012) (*citing Backman*, 102 F.Supp.2d at 1198); *see also Phillips*, 2012 WL 688799 at *1 (denying enhanced damages where the defendant did not charge a cover charge and "the record [was] unclear on whether the establishment actually profited from the violation)

Plaintiff alleged: "Said unauthorized interception, reception, publication, exhibition, divulgence, display, and/or exhibition by the each of the Defendant was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain." (Doc. 1 at 6, ¶ 18) Importantly, there are no factual allegations in the complaint to support the legal conclusion that Defendant's actions were willful or for the purpose of financial gain. Previously, the Court explained:

> To adequately state a claim against a defendant, a plaintiff must set forth the legal and factual basis for his or her claim. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While factual allegations are accepted as true, legal conclusions are not. *Iqbal*, 556 U.S. at 678. A plaintiff must set forth "the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555-56 (internal quotation marks and citations omitted). In its complaint, Plaintiff simply alleged a legal conclusion: "Said unauthorized interception, reception, publication, exhibition, divulgence, display, and/or exhibition by each of the Defendant [sic] was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain."

*Joe Hand Promotions, Inc. v. Hathcock*, 2012 U.S. Dist. LEXIS 101208, at *2-3 (E.D Cal. July 20, 2012). Consequently, the Court found Plaintiff "failed to allege facts establishing the grounds of entitlement to enhanced damages." *Id.* at *3.

As noted above, neither the complaint nor the evidence submitted indicate that there were advertisements for the fight, or that a cover charge was imposed to enter La Tormenta Night Club.

9

There also is no indication that food or drink prices were increased because of the fight, or that the number of people in the location was unusual or could be attributed to the fight. Moreover, the complaint now before the Court contains the same language as the complaint in *Hathock*, and suffers the same infirmities. Because there is insufficient evidence to support the conclusion that the broadcast of the Program was done for purposes of commercial or private gain, enhanced damages are not recommended.

### C. Damages for Conversion

Finally, because Plaintiff elected to receive statutory damages rather than actual damages under the Communications Act, the Court finds any damages for conversion are subsumed into the total award of $8,000. *See, e.g., J & J Sports Prods. v. Argueta*, 224 F.Supp.3d 700, 703 (W.D. Ark. 2016) (finding that "as a matter of law that if liability is established for both a violation of § 605 and the conversion claim, J & J must elect its remedy because the Court will not allow recovery for both" conversion and a violation of the Telecommunications Act"); *J &J Sports Prods. v. Romenski*, 845 F.Supp.2d 703, 707 (N.C.W.D. 2012) (noting a "[p]laintiff may not recover conversion damages in addition to actual or statutory damages under Section 605").

Likewise, this Court has declined to award both statutory damages and damages for conversion where the plaintiff requested stator damages. *See, e.g., Joe Hand Promotions, Inc. v. Behari*, 2013 WL 1129311 at *3, n.2 (E.D. Cal. Mar. 18, 2013) (explaining damages conversion would not be awarded "because the recommended statutory damages will sufficiently compensate plaintiff such that an award for conversion damages would be duplicative"); *J &J Sports Prods. v. Mannor*, 2011 WL 1135356, at *3 (E.D. Cal. Mar. 28, 2011) (declining to award damages for conversion because "plaintiff has been sufficiently compensated through the federal statutory scheme" where the award total was $3,200 and the cost of the proper license was $2,200); *J & J Sports Prods. v. Bachman*, 2010 U.S. Dist. LEXIS 44884, at *22 (E.D. Cal. May 7, 2010) (declining conversion damages because statutory damages "sufficiently compensate[d]" the plaintiff). Consequently, the Court recommends the request for additional damages for conversion be denied.

### VI. Findings and Recommendations

The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment

is within the discretion of the Court. *See Aldabe*, 616 F.2d at 1092. However, the damages requested are disproportionate to Defendants' actions. Importantly, when determining the amount of damages to be awarded for signal piracy, "the principle of proportionality governs." *Backman*, 102 F.Supp.2d at 1198. Under this principle, "distributors should not be overcompensated and statutory awards should be proportional to the violation." *Id.* As observed in *Streshly*, Defendant "may be the Blackbeard of pirates, but Plaintiff makes no attempt to portray [him] as such, and to the contrary, the act of piracy attributed to [Defendant] is as routine as they come . . ." *Streshly*, 655 F.Supp.2d at 1139.

Accordingly, the Court recommends the award of $8,000 for Defendant's wrongful acts. This amount both compensates Plaintiff for the wrongful act and is a suitable deterrent against future acts of piracy. *See Kingvision Pay-Per-View v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999) (observing that a lower statutory award may deter while not destroying a business). Based upon the foregoing, the Court **RECOMMENDS**:

1. Plaintiff's application for default judgment (Doc. 15) be **GRANTED IN PART AND DENIED IN PART** as follows:

    A. Plaintiff's request for statutory damages for the violation of the Communications Act be **GRANTED** in the amount of $8,000;

    B. Plaintiff's request for enhanced damages be **DENIED**;

    C. Plaintiff's request for damages for the tort of conversion be **DENIED**;

2. Judgment be entered in favor of Plaintiff J & J Sports Productions, Inc. and against Defendant Javier Mendoza Cervantes, also known as Javier C. Mendoza, individually and doing business as La Tormenta Night Club; and

3. Plaintiff be directed to file any application for attorney's fees pursuant to 47 U.S.C. § 605 no later than fourteen days from the entry of judgment.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the date of service of these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's

Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **August 2, 2018**          **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE